b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| FRANKIE REEVES, Plaintiff | CIVIL DOCKET NO. 1:22-CV-05549 |
| VERSUS | CHIEF DISTRICT JUDGE DOUGHTY |
| KEYSTONE RV CO., ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is "Defendants' Rule 12(b)(3) Motion to Dismiss Based on Improper Venue." ECF No. 7. Because Plaintiff has shown the Western District of Louisiana is a proper venue, Defendants' Motion to Dismiss (or Transfer) (ECF No. 7) should be denied.

I. Background

Plaintiff Frankie Reeves ("Reeves") filed a Complaint pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d), with supplemental state law claims. Reeves asserts jurisdiction pursuant to 28 U.S.C. § 1331. The named Defendants are Keystone RV Company ("Keystone RV") (incorporated in Delaware, with its principal place of business in, Indiana, according to the Delaware and Indiana Secretaries of State), and Bent's R.V. Rendezvous, L.L.C. d/b/a Bent's RV ("Bent's RV") (a Louisiana limited liability company in Boutte, Louisiana).[1]

---

[1] Bent's RV does not appear to be registered with the Louisiana Secretary of State.

Reeves asserts that, on January 20, 2021, he purchased a new 2020 Montana High Country 373RD FifthWheel from Bent's RV. ECF No. 1 at 1. Reeves purchased the vehicle for both work use and recreational use. ECF No. 1 at 2. Within one year of purchase, Reeves's fifth wheel experienced defects: (1) air conditioning breaking and leaking; (2) all four slides leaking; (3) mold growing in the walls; (4) crown molding fell off in the kitchen; (5) the awning cover flew off while traveling; and (6) the motor cover malfunctioned. ECF No. 1 at 4.

On December 21, 2021, Reeves returned the fifth wheel to Bent's RV. ECF No. 1 at 4. The fifth wheel was taken to a Keystone factory on July 5, 2022. ECF No. 1 at 4-5. It was returned to Reeves, from the factory, at Cenla RV in Alexandria, Louisiana on November 6, 2022. ECF No. 12 at 2.

For relief, Reeves seeks monetary damages, rescission of the sale, attorney's fees, costs, and interest. ECF No. 1.

Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3), based on improper venue. ECF No. 7. Alternatively, Defendants ask that the case be transferred to the Eastern District of Louisiana. Defendants contend all of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Louisiana.[2] ECF No. 7.

Plaintiff opposes that motion. ECF No. 13.

---

[2] No arguments as to personal jurisdiction or a forum selection clause have been made.

## II. Law and Analysis

Defendants move to transfer venue from the Western District of Louisiana to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1406 and Fed. R. Civ. P. 12(b)(3). Defendants contends most of the events in this case took place in the Eastern District of Louisiana.

In an unsworn statement, Brian Bent ("Bent") states that he is one of the owners of Bent's R.V. Rendezvous, L.L.C. ECF No. 7-2. Bent claims that Reeves purchased a recreational vehicle from Bent's RV in Boutte, and later sought repairs there. ECF No. 7-2.

Bent attached the file maintained on Reeves's fifth wheel to his statement. ECF No. 7-2. The Certificate of Origin shows Reeves's fifth wheel came from Keystone RV Company in Indiana, and that Bent's RV Rendezvous, L.L.C. is the dealer/distributor. ECF No. 7-2 at 21. The file also reveals the following problems with the fifth wheel (ECF No. 7-2 at 26-44): (1) the freezer door did not have a handle; (2) the back skylight lap seal had gaps in the sealant; (3) the paneling detached on both sides of the rear cargo bay; (4) the autolevel system was not working; (5) there was vibration when the air conditioner was turned on; (6) the microwave door would not latch; (7) the trim at the floor by the doorway and stairway into the living area was loose; (8) the LED/awning rail pulled out of the unit; (9) the lock was missing from the door for the auto level control system; (9) the air conditioner stopped cooling; (10) water leaked in the window and caused flooring damage in the bedroom; (11) the

3

compartment door did not close correctly on the driver's side; (12) molding fell from the kitchen ceiling above the range; (13) water leaked into the bedroom under the window, causing the wallpaper to bubble; (14) water leaked around the USB in the living room wall, causing the wallpaper to bubble and the USB to not work; (15) the toilet leaked where the pedal was getting stuck; (16) the awning motor head cover was missing; (17) the glass over the stereo would not stay closed; (18) the rear awning arm leaked; (19) the front awning arm leaked; (20) the rear driver side ceiling slide-out panel leaked, causing mold to grow; (21) the rear passenger side slide-out wall and ceiling panel leaked, causing mold to grow; and (22) the dinette slide-out panel leaked, allowing water into the wall and causing mold to grow.

In another unsworn statement, Reeves states that he resides in Forest Hill. ECF No. 12-1. He contends that, the day he picked up his new fifth wheel, the air conditioner malfunctioned and began to leak when he was parked in Morgan City. ECF No. 12-1. The air conditioner was replaced in Morgan City. ECF No. 12-1. The warranty covered that repair. ECF No. 12-1.

Reeves used the fifth wheel for ten months. During that time, Reeves was working as an equipment operator in Morgan City and in Baytown, Texas. ECF No. 12-1.

Reeves noticed leaking, water, and mold while working in both Morgan City and in Baytown. ECF No. 12-1. All four slide-outs began leaking and the walls started showing signs of water leaks–delamination of the wall board, wet spots after

rain, and leaking down the walls. ECF No. 12-1. With his statement, Reeves also submitted an invoice showing his repaired RV was delivered to him on November 7, 2022 at Cenla RV Center in Alexandria, Louisiana. ECF No. 12-2.

If a defendant objects to venue, the burden is on the plaintiff to establish venue is proper in the judicial district where the case has been brought. *See Strange v. Carnival Corp.*, 2019 WL 1281251, at *4 (W.D. La. 2019); *CAM Logistics, L.L.C. v. Pratt Industries, Inc.*, 2021 WL 4485890, at *15 (W.D. La. 2021), *report and recommendation adopted,* 2021 WL 4483853 (W.D. La. 2021). In analyzing a Rule 12(b)(3) motion to dismiss, a court must accept all allegations in the complaint as true and must resolve all conflicts in favor of the plaintiff. *See Strange*, 2019 WL 1281251 at *4 (*citing Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007)); *CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15. The court may consider evidence beyond the facts "alleged in the complaint and its proper attachments." *Strange*, 2019 WL 1281251 at *4 (*citing Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. den.*, 558 U.S. 1111 (2010)); *CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15.

Rule 12(b)(3) and § 1406(a)[3] authorize dismissal or transfer only when the venue is improper–not when the venue is proper but another, preferable venue exists. *See Atlantic Marine Construction Co.*, 571 U.S. at 55; *see also Baylor University v.*

---

[3] 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

*Baylor Youth Foundation, Inc.*, 2022 WL 17732432, at *2 (W.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 18911511 (W.D. Tex. 2022); *CADS Construction, L.L.C. v. Matrix Service, Inc.*, 2021 WL 4762406, at *2 (W.D. La. 2021), *aff'd*, 2021 WL 6327688 (W.D. La. 2021). Generally:

> A civil action may be brought in–
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "If venue is challenged, the court must determine whether the case falls within one of the three categories." *Strange*, 2019 WL 1281251 at *4 (*citing Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Atlantic Marine Construction Co.*, 571 U.S. at 55; *CADS Construction, L.L.C.*, 2021 WL 4762406, at *2. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." *Id.*

Only § 1391(b)(2) is applicable in this case. Venue is proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(b)(2). "Venue may be proper in more than one district, and

6

the 'substantial part of the events or omissions test does not require that the chosen venue to be the *best* venue ... [T]he selected district must simply have a substantial connection to the claim." *Zurich American Insurance Co. v. Tejas Concrete & Materials, Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (*quoting VP, LLC v. Newmar Corp.*, 2012 WL 6201828, at *9 (E.D. La. 2012)); *McClintock v. School Board East Feliciana Parish*, 299 Fed. Appx. 363, 365 (5th Cir. 2008); *CAM Logistics, L.L.C.*, 2021 WL 4485890, at *1.

"'[S]ubstantiality' for venue purposes is 'more of a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.'" *University Rehabilitation Hospital, Inc. v. International Co-operative Consultants, Inc.*, 2006 WL 1098905, at *2 (W.D. La. 2006) (citing *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 432–33 (2d Cir. 2005)); *see also CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15. "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." *See McClintock*, 299 Fed. Appx. at 365; *see also CAM Logistics, L.L.C.*, 2021 WL 4485890, at *15; *New World Art Center, Inc. v. Singh,* 2021 WL 3045399, at *2 (W.D. La. 2021), *report and recommendation adopted,* 2021 WL 3045121 (W.D. La. 2021). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too

7

is the substantiality necessary to support venue." *University Rehabilitation Hospital, Inc.*, 2006 WL 1098905 at *2.

Reeves raises a claim under Louisiana rehibition laws, La. C.C. arts. 2520, et seq.[4]; alleges negligent repair; and requests recission of the sale. The Magnuson-Moss Warranty Act[5] provides a federal cause of action for consumers injured by a supplier's breach of warranty obligations. 15 U.S.C. § 2301 *et seq.* "The MMWA defines an implied warranty as 'an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product.'" 15 U.S.C. § 2301(7). 'Federal courts apply analogous state law to breach of warranty claims under the MMWA.'" *Mancuso v. Forest River, Inc.*, 2022 WL 16834554, at *3 (E.D. La. 2022)

---

[4] La. C.C. art. 2520, Warranty against redhibitory defects, states:
   The seller warrants the buyer against redhibitory defects, or vices, in the thing "sold.

   A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

   A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

[5] "The Magnuson-Moss Warranty Act 'creates a statutory cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or established by a written warranty, implied warranty, or service contract.'" *Lee v. Forest River, Inc.*, 2017 WL 4076028, at *3 (E.D. La. 2017) (quoting *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 474 (5th Cir. 2002)). "The Act does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the terms of the Act." *Lee*, 2017 WL 4076028, at *3 (quoting *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1061 (5th Cir. 1984)).

(citing *Naquin v. Forest River, Inc.*, 2018 WL 3147497, at *9 (W.D. La. 2018), *report and recommendation adopted*, 2018 WL 3131058 (W.D. La. 2018)). "Breach of warranty actions in Louisiana are brought in redhibition." *Lee v. Forest River, Inc.*, 2017 WL 4076028, at *3 (E.D. La. 2017) (citing *Ford Motor Credit Co. v Bower,* 589 So.2d 571, 573 (La. App. 1st Cir. 1991)); see also *Mancuso*, 2022 WL 16834554, at *3.

"Under Louisiana law, a 'seller warrants the buyer against redhibitory defects, or vices, in the thing sold.'" La. Civ. Code art. 2520; *Mancuso*, 2022 WL 16834554, at *3. A defect can be redhibitory in two ways: (1) "it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect[,]" or (2) "it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Chisum v. Mercedes-Benz USA, L.L.C.*, 2019 WL 1601369, at *2 (M.D. La. 2019); La. C.C. art. 2520.

The events that gave rise to Reeves's claims are: (1) he purchased the fifth wheel from Bent RV in Boutte, within the Eastern District of Louisiana; (2) it malfunctioned in Morgan City, Forest Hill, and Baytown (Texas), two of which are within the Western District of Louisiana; (3) it underwent its first repairs (to the air conditioner) in Morgan City, which is, again, within the Western District of Louisiana; and (4) it underwent all other repairs within the Eastern District of Louisiana and in Indiana. ECF No. 12-2.

9

Citing *Seariver Maritime Financial Holdings, Inc. v. Pena,* 952 F. Supp. 455, 460 (S.D. Tex. 1996) (which relies on *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995)), Defendants argue the Court should focus only on their relevant activities, and not Reeves's activities, in analyzing the "events or omissions giving rise to the claim." *Woodke* stated the Court should not consider the "adverse economic effects" arising from Plaintiff's claim that are felt by him where he lives. *See Woodke,* 70 F.3d at 985 ("[W]hile damages or potential adverse economic effect are a necessary part of a Lanham Act claim, if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly."). However, the Court has not considered Plaintiff's claim for economic losses–an element of damages–in determining venue. And the Court will not just consider Defendants' activities. Obviously, not all of the events in this type of case occurred when the Defendants were nearby.

It is clear that many events giving rise to Reeves's claims occurred within the Western District of Louisiana, including the RV's malfunctions and its first repairs. Defendants argue that the greatest number of "events" took place within the Eastern District of Louisiana. However, as stated above, substantiality for venue purposes is a qualitative, rather than a quantitative, inquiry. There can be more than one proper venue. There seems to be two in this case.

Because the Court finds that "substantial" events giving rise to Plaintiff's claims occurred within the Western District of Louisiana, venue is proper here under

10

§ 1391(b)(2). *Compare Silver v. Forest River, Inc.,* 2023 WL 4056483, at *8 (W.D. La. 2023), *report and recommendation adopted,* 2023 WL 4055645 (W.D. La. 2023) (substantial activities took place and venue was proper in the district where the RV malfunctioned and where two repairs took place).

### III. Conclusion

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss or Transfer for Improper Venue (ECF No. 9) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

11

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___17th___ day of August 2023.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge